UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------ X

MOATAZ ABDELHAMID, Personal     :
Representative of the Estate of Shereen    :
Gazayerli-Abdelhamid,                :
                                  :
         `     **Plaintiff,**         :
                                    :
        - against -                :
                                    :

**ALTRIA GROUP, INC.,** a Virginia    :
corporation, **PHILIP MORRIS**       :
**INTERNATIONAL,** a Delaware     :
corporation, **PHILIP MORRIS**       :
**PRODUCTS S.A.,** a Switzerland     :
corporation, and **LOUTFY MANSOUR** :
**INTERNATIONAL DISTRIBUTION**   :
**COMPANY,** an Arab Republic of Egypt :
company, jointly and severally,      :
                                    :
            **Defendants.**      :
------------------------------------------------------ X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 7/27/07

## OPINION AND ORDER

### 06 Civ. 3927 (SAS)

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.    INTRODUCTION

      Moataz Abdelhamid brings this diversity[1] action against, *inter alia*,

Altria Group, Inc. ("Altria") and Philip Morris International[2] ("PMI") ("the

---

     [1]     This Court has jurisdiction over this matter pursuant to section
1332(a) of title 28 of the United States Code.

     [2]     Abdelhamid has been unable to serve Loutfy Mansour International
Distribution Company ("Mansour") with process. Philip Morris Products S.A.
("PMP") has stipulated to the filing of a responsive pleading within thirty days of

defendants") claiming that his wife suffered grave injury as a result of their negligence and/or gross negligence. The claim arises from the electrocution and death of Abdelhamid's wife, Shereen Gazayerli-Abdelhamid, at a concert she attended in Cairo, Egypt, on August 12, 2005. Abdelhamid seeks damages for, *inter alia*, his wife's medical and funeral expenses, her pain and suffering, his loss of companionship and society, as well as punitive damages and all other damages recoverable under the New York Wrongful Death Act.

On January 31, 2007 Abdelhamid amended his complaint. Altria and PMI now move to dismiss the Amended Complaint for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. On April 4, 2007, in a separate submission, both defendants move for Rule 11 sanctions against plaintiff based on the filing of the Amended Complaint.

After reviewing the parties' submissions, I requested additional briefing on the applicability of Egyptian law. For the reasons that follow, defendants' motions to dismiss and for sanctions are granted.

## II.   BACKGROUND[3]

---

this Order. *See* 7/3/07 Stipulation and Order.

[3]    For purposes of the motion to dismiss, the factual allegations in the Amended Complaint are presumed to be true. However, I note that with respect to the motion for sanctions, I have considered the parties' submissions, which

2

### A.   Distribution of Marlboro Cigarettes in Egypt

In 2002, Altria was the parent company and sole owner of PMI.[4]
Both companies conducted business throughout the world.[5]  Philip Morris
Products S.A. ("PMP") was a business unit of PMI that was incorporated in
Switzerland.[6]

On or about January 1, 2002, Mansour, an Egyptian company, entered
into two agreements with PMI through PMI's business unit, PMP.[7]  The first
agreement was an agreement to license, manufacture, package, promote, sell,
trademark, and distribute cigarettes, including cigarettes produced under the
Marlboro brand.[8]  The second agreement was an agreement with Mansour and
another company permitting Mansour to manufacture, supply, deliver and

---

include excerpts from depositions of persons with knowledge from both Altria and
PMI, taken prior to the filing of the Amended Complaint.  As discussed below,
those depositions reveal that plaintiff made baseless factual allegations that are at
odds with the deposition testimony.

[4]      *See* Amended Complaint ("Amend. Comp.") ¶ 2.

[5]      *See id.* ¶¶ 2-3.

[6]      *See id.* ¶ 4.

[7]      *See id.* ¶¶ 7-8.

[8]      *See id.* ¶ 7.

3

distribute cigarettes under the Marlboro brand.[9]

**B.      The Diplomat Village Concert**

On August 12, 2005, Shereen Gazayerli-Abdelhamid paid an admission fee and attended a party and concert on the beach at Diplomat Village in Cairo, Egypt.[10]  Over one thousand people attended this concert and there were numerous advertising booths along the beach.[11]  These booths displayed the names of various sponsors, and there were a number of booths that displayed the Marlboro brand name.[12]

One of the booths that displayed the Marlboro brand name was used to market and distribute Marlboro cigarettes pursuant to Mansour's licensing and manufacturing agreements with PMI.[13]  Power from an electrical generator illuminated the booth which was attached to a generator by an electrical cord.[14] During the evening of August 12th and the morning of August 13th, a number of

---

[9]      *See id.* ¶ 8.

[10]     *See id.* ¶¶ 10-11.

[11]     *See id.* ¶¶ 11-12.

[12]     *See id.* ¶ 12.

[13]     *See id.* ¶ 13.

[14]     *See id.* ¶¶ 14-15.

patrons who touched the electrical cord or the Marlboro booth received an electrical shock.[15]  These patrons notified a Marlboro employee — defined in the Amended Complaint as an agent of Altria, PMI, PMP and/or Mansour — of what happened.[16]  The Marlboro employee did nothing to remedy the electrical hazard.[17]

On August 13, 2005, at the conclusion of the concert, Ms. Abdelhamid stepped on the electrical cord and then touched a metal portion of the booth, resulting in her death by electrocution.[18]

## III.   LEGAL STANDARD

### A.   Rule 12(b)(6) – Motion to Dismiss

"Federal Rule of Civil Procedure 8(a)(2) requires . . . 'a short and plain statement of the claim showing that the pleader is entitled to relief.'"[19]  When deciding a defendant's motion to dismiss under Rule 12(b)(6), the court must "accept as true all of the factual allegations contained in the complaint"[20] and

---

[15]   *See id.* ¶ 17.

[16]   *See id.*

[17]   *See id.*

[18]   *See id.* ¶ 18.

[19]   *Erickson v. Pardus*, 127 S. Ct. 2197, 2200 (2007) (quoting Fed. R. Civ. P. 8(a)(2)).

[20]   *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1964 (2007).

5

"draw all reasonable inferences in plaintiff's favor."[21]

Nevertheless, to survive a 12(b)(6) motion to dismiss, the allegations in the complaint must meet the standard of "plausibility."[22]  Although the complaint need not provide "detailed factual allegations,"[23] it must "amplify a claim with some factual allegations . . . to render the claim *plausible*."[24]  The test is no longer whether there is "no set of facts" that plaintiff could prove "which would entitle him to relief."[25]  Rather, the complaint must provide "the grounds upon which [the plaintiff's] claim rests through factual allegations sufficient 'to

---

[21]  *Ofori-Tenkorang v. American Int'l Group, Inc.*, 460 F.3d 296, 298 (2d Cir. 2006).

[22]  *See Bell Atlantic*, 127 S. Ct. at 1970.

[23]  *Id.* at 1964. *See also ATSI Commc'ns  v. Shaar  Fund, Ltd.* — F.3d —, No. 05-5132, 2007 WL 1989336, at *5 n.2 (2d Cir. July 11, 2007) (applying the standard of plausibility outside Twombly's anti-trust context) .

[24]  *Iqbal v. Hasty*, — F.3d —, No. 05-5732, 2007 WL 1717803, at *11 (2d Cir. June 14, 2007) (emphasis in original) (holding that the plaintiff's complaint adequately alleged the personal involvement of the Attorney General because it was plausible that officials of the Department of Justice would be aware of policies concerning individuals arrested after 9/11).

[25]  *Bell Atlantic*, 127 S. Ct. at 1969 (quoting *Conley v. Gibson*, 355 U.S. 45-46 (1957)) ("[t]he phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard").

6

raise a right to relief above the speculative level.'"[26]

Although the court must take the plaintiff's allegations as true, "the claim may still fail as a matter of law . . . if the claim is not legally feasible."[27] In addition, "bald assertions and conclusions of law will not suffice."[28]

## B. Rule 11 Sanctions

A pleading, motion or other paper violates Rule 11 either when it "has been interposed for any improper purpose, or where, after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well-grounded in fact and warranted by existing law or a good faith argument for the extension, modification or reversal of existing law."[29] "'Although arguments for a change of law are not required to be specifically so identified, a contention that is so identified should be viewed with greater tolerance under the rule.'"[30] In

---

[26] *ATSI Commc'ns*, 2007 WL 1989336, at \*5 (quoting *Bell Atlantic*, 127 S. Ct. at 1965).

[27] *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, 457 F. Supp. 2d 455, 459 (S.D.N.Y. 2006) (citing *Allaire Corp. v. Okumus*, 433 F.3d 248, 250 (2d Cir. 2006)).

[28] *Law Offices of Curtis V. Trinko, L.L.P. v. Bell Atlantic Corp.*, 309 F.3d 71, 74 (2d Cir. 2002) (quotation omitted).

[29] *Kropelnicki v. Siegel*, 290 F.3d 118, 131 (2d Cir. 2002).

[30] *Simon DeBartolo Group, L.P. v. Richard E. Jacobs Group, Inc.*, 186 F.3d 157, 166 (2d Cir. 1999) (quoting Rule 11 Advisory Committee Note).

determining whether a Rule 11 violation has occurred, the court should use an objective standard of reasonableness.[31] Nevertheless, "the extent to which a litigant has researched the issues and found some support for its theories even in minority opinions, in law review articles, or through consultation with other attorneys should certainly be taken into account."[32]

To be sure, the Supreme Court has cautioned that Rule 11 "must be read in light of concerns that it will . . . chill vigorous advocacy."[33] Thus, "[w]hen divining the point at which an argument turns from merely losing to losing and sanctionable" courts must "resolve all doubts in favor of the signer of the pleading."[34] Sanctions should be imposed only "'where it is patently clear that a claim has absolutely no chance of success.'"[35] Normally, "the principal objective of the imposition of Rule 11 sanctions is not compensation of the victimized party

---

[31]  *See id.* ("'[Rule 11] establishes an objective standard, intended to eliminate any 'empty-head pure-heart' justification for patently frivolous arguments.'" (quoting Rule 11 Advisory Committee Note)).

[32]  *Id.*

[33]  *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 393 (1990).

[34]  *Rodick v. City of Schenectady*, 1 F.3d 1341, 1350 (2d Cir. 1993).

[35]  *Caisse Nationale de Credit Agricole-CNCA v. Valcorp, Inc.*, 28 F.3d 259, 264 (2d Cir. 1994) (quoting *Healey v. Chelsea Res., Ltd.*, 947 F.2d 611, 626 (2d Cir. 1991)).

but rather the deterrence of baseless filings and the curbing of abuses."[36]

If, after notice and a reasonable opportunity to respond, the court determines that the Rule 11 standard has been violated, the court may impose sanctions upon the attorneys, law firms, or parties.[37] "The court has significant discretion in determining what sanctions, if any, should be imposed for a violation, subject to the principle that the sanctions should not be more severe than reasonably necessary to deter repetition by the offending person or comparable conduct by similarly situated persons."[38] Among the types of sanctions that the court may choose are: a fine or penalty paid to the court, an award of reasonable expenses and attorneys' fees incurred as a result of the misconduct, an order precluding the introduction of certain evidence, and dismissal of the action.[39]

## IV.   APPLICABLE LAW

### A.   Choice of Law

---

[36]   *Id.* at 266.

[37]   *See* Fed. R. Civ. P. 11(c).

[38]   Rule 11 Advisory Committee Note.

[39]   *See* Gregory P. Joseph, *Sanctions: The Federal Law of Litigation Abuse* §16(b)(3) (3d ed. 2000). *See also Murray v. Dominick Corp. of Canada, Ltd.*, 117 F.R.D. 512, 515-16 (S.D.N.Y. 1987) (acknowledging that, like Rule 37, Rule 11 provides for the sanction of dismissal of a pleading, motion, or other paper).

9

"[I]n diversity cases the federal courts must follow conflict of laws rules prevailing in the states in which they sit."[40]  As a result, New York's choice of law rules will apply for the purpose of determining which state's or which country's law defines whether Abdelhamid has stated a claim against Altria and/or PMI.  "The New York Court of Appeals has held that 'the relevant analytical approach to choice of law in tort actions in New York' is the '[i]nterest analysis.'"[41]  Under the interest analysis, "'[t]he law of the jurisdiction having the greatest interest in the litigation will be applied and . . . the [only] facts or contacts which obtain significance in defining State interests are those which relate to the purpose of the particular law in conflict.'"[42]  Significant facts or contacts consist of, "'almost exclusively, the parties' domiciles and the locus of the tort . . . .'"[43]

"Under the interest-analysis test, torts are divided into two types, those involving the appropriate standards of conduct, rules of the road, for example and those that relate to allocating losses that result from admittedly

---

[40]    *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 494 (1941). *Accord Wall v. CSX Transp., Inc.,* 471 F.3d 410, 415 (2d Cir. 2006).

[41]    *GlobalNet Financial.Com, Inc. v. Frank Crystal & Co., Inc.,* 449 F.3d 377, 384 (2d Cir. 2006) (quoting *Schultz v. Boy Scouts of Am., Inc.*, 65 N.Y.2d 189, 197 (1985)).

[42]    *Id.* (quoting *Schultz*, 65 N.Y.2d at 197) (additional citations omitted).

[43]    *Id.* (quoting *Schultz*, 65 N.Y.2d at 197).

10

tortious conduct . . . such as those limiting damages in wrongful death actions, vicarious liability rules, or immunities from suit."[44]  When conduct-regulating rules are at issue, "'the law of the jurisdiction where the tort occurred will generally apply because that jurisdiction has the greatest interest in regulating behavior within its borders.'"[45]

When loss-allocating rules are at issue, and the location of the accident is the domicile of one or both of the parties, the interest analysis will turn mainly on consideration of the parties' domiciles.[46]  However, when "the injured party and the defendant reside in different jurisdictions and the accident occurred in a third jurisdiction, the law of the place of the accident presumptively applies" for loss-allocation as well.[47]  "That presumption may be overcome . . . if 'it can be shown that displacing [the law of the third jurisdiction] will advance the relevant substantive law purposes without impairing the smooth working of the multi-state

---

[44]   *Id.* (quotation marks and citations omitted).

[45]   *Id.* (quoting *Cooney v. Osgood Mach., Inc.*, 81 N.Y.2d 66, 72 (1993)).

[46]   *See Brink's Ltd. v. South African Airways,* 93 F.3d 1022, 1031 (2d Cir. 1996) (citing *Cooney*, 81 N.Y.2d at 72).

[47]   *Pescatore v. Pan Am. World Airways, Inc.*, 97 F.3d 1, 13 (2d Cir. 1996) (citing *Neumeier v. Kuehner*, 31 N.Y.2d 121, 128 (1972)).

11

system or producing great uncertainty for litigants.'"[48]  In other words, the party

seeking to overcome this presumption must show that "[New York's] connection

with the controversy is sufficient to justify displacing the rule of the *lex loci*

*delictus*."[49]

ᶜ"Choice of law does not matter, however, unless the laws of the

competing jurisdictions are actually in conflict."[50]  "Laws are in conflict '[w]here

the applicable law from each jurisdiction provides different substantive rules.'"[51]

"In the absence of substantive difference, however, a New York court will

dispense with choice-of-law analysis, and if New York law is among the relevant

---

[48]     *Id.* (quoting *Neumeier*, 31 N.Y.2d at 128).

[49]     *Gillenson v. Happiness Is Camping, Inc.,* 829 N.Y.S.2d 444, 446
(Sup. Ct. Bronx Co. 2006) (citing *Neumeier*, 31 N.Y.2d at 128-29). *Cf. Phelan v.
Budget Rent A Car Sys. Inc.*, 699 N.Y.S.2d 568, 569 (3d Dep't 1999) (holding that
Connecticut law should not displace the law of New York, the *lex loci delictus,* in
a wrongful death case where a car accident took place in New York, the decedent
— a Connecticut domiciliary — was killed while on vacation in New York, the
plaintiff and the decedent's driver owned vacation homes in New York and where
defendant had no connection to Connecticut).

[50]     *International Bus. Machs. Corp. v. Liberty Mut. Ins. Co.,* 363 F.3d
137, 143 (2d Cir. 2004) (citing *In re Allstate Ins. Co.* ("*Stolarz*"), 81 N.Y.2d 219,
223 (1993)).

[51]     *Id.* (quoting *Curley v. AMR Corp.*, 153 F.3d 5, 12 (2d Cir. 1998)).

choices, New York courts are free to apply it."[52]

## B.    New York Law

### 1.    Negligence

"Under New York law, the elements of a negligence claim are: (I) a duty owed to the plaintiff by the defendant; (ii) breach of that duty; and (iii) injury substantially caused by that breach."[53]  A claim for gross negligence is stated where "'there is a reckless indifference to the safety of human life or intentional failure to perform a manifest duty to the public.'"[54]

### 2.    Vicarious Liability

#### a.    Respondeat Superior

Under the common law doctrine of respondeat superior, an employer may be held liable for the tortious acts of an employee committed within the scope

---

[52]    *Id.* (citing *J. Aron & Co. v. Chown*, 647 N.Y.S.2d 8, 8 (1st Dep't 1996)).

[53]    *Lombard v. Booz-Allen & Hamilton, Inc.*, 280 F.3d 209, 215 (2d Cir. 2002).

[54]    *Charter Oak Fire Ins. Co. v. Trio Realty* Co., No. 99 Civ. 10827, 2002 WL 123506, at *4 (S.D.N.Y. Jan. 31, 2002) (quoting *International Mining Corp. v. Aerovias Nacional de Colombia*, 393 N.Y.S.2d 405, 407 (1st Dep't 1977)). *Accord Kerman v. City of New York.*, 374 F.3d 93, 108 (2d Cir. 2004) (citation omitted) (stating that gross negligence was "reckless disregard or intentional wrongdoing").

of his employment.[55] This doctrine, however, does not render a parent company

liable for the conduct of a subsidiary.[56]

### b.    Joint Enterprise

A party can be jointly liable for the tortious acts of another when both

parties are part of a joint enterprise. To allege a joint enterprise, a plaintiff must

allege that there was "'(1) an express or tacit agreement to participate in a common

plan . . . to commit a tortious act, (2) tortious conduct by each defendant, and (3)

the commission by one of the defendants, in pursuance of the agreement, of an act

that constitutes a tort.'"[57]  In addition, the plaintiff must allege that each member

---

[55]    *See Swierczynski v. O'Neil*, No. 06-0635, 2007 WL 1651883, at *1 (4th Dep't June 8, 2007) (quoting *Lundberg v. State of New York*, 25 N.Y.2d 467, 470-71 (1969)).

[56]    *See In re Alstom SA*, 454 F. Supp. 2d 187, 214 (S.D.N.Y. 2006) (citing *In re Global Crossing Sec. Litig.*, No. 02 Civ. 910, 2005 WL 2990646, at *5 (S.D.N.Y. Nov. 7, 2005)).

[57]    *@Wireless Enters., Inc. v. AI Consulting, LLC*, No. 05 Civ. 6176, 2006 WL 3370696, at *8 (W.D.N.Y. Oct. 30, 2006) (quoting *Pittman by Pittman v. Grayson*, 149 F.3d 111, 122-23 (2d Cir. 1998)).  A common plan is an agreement to participate in a particular course of conduct. *See Rodriguez v. City of New York.*, 827 N.Y.S.2d 220, 221-22 (2d Dep't 2006) (holding that the plaintiff stated a claim for joint enterprise liability where he alleged a plan in which television producers and police officers agreed that the officers would use excessive force in the execution of a warrant and thereby create an unreasonable risk that resulted in the  plaintiff's injury); *Harris v. Stanley*, 799 N.Y.S.2d 837, 839 (3d Dep't 2005) (holding that the defendant could be liable as part of a joint enterprise where he assisted two other defendants in filling water balloons and he

14

of the joint enterprise had an equal right to direct or control the other members.[58]

A claim based on joint enterprise liability will fail if the plaintiff does not allege

that a participant in a joint enterprise could control the other participants with

respect to the particular course of conduct that caused the plaintiff's injury.[59]

## V. DISCUSSION

### A. Egyptian Law - Joint Enterprise Liability

The parties disagree about whether there is a conflict between New

York law and Egyptian law on the issue of joint enterprise liability.[60] Abdelhamid

---

drove a truck from which the other defendants threw the water balloons at cars);
*Policastro v. Savarese*, 567 N.Y.S.2d 784, 787 (2d Dep't 1991) (holding that the
defendants were liable as members of a joint enterprise when they raced their cars
on a public road and caused an accident).

[58]     *See Becker v. Club Las Velas*, No. 94 Civ. 2412, 1994 WL
376016, at *5 (S.D.N.Y. July 8, 1994) (citing *Fairbarn v. State,* 484 N.Y.S.2d 682,
683 (3d Dep't 1985)).

[59]     *See id.* (holding that hotel agent had no joint enterprise liability for
plaintiff's kayaking injury because plaintiff did not allege that the agent could
control the hotel's actions with respect to the recreational activities offered at the
hotel).

[60]     Rule 44.1 of the Federal Rules of Civil Procedure gives the Court
discretion in interpreting foreign law. *See* Fed. R. Civ. P. 44.1. The court may
"consider any relevant material or source . . . whether or not submitted by a party
or admissible under the Federal Rules of Evidence." *Id.* "'Because of this
latitude, a court may reject even uncontradicted expert testimony and reach its own
decisions on the basis of [an] independent examination of foreign legal
authorities.'" *Guidi v. Inter-Continental Hotels Corp.,* No. 95 Civ. 9006, 2003
WL 1907901, at *2 (S.D.N.Y. Apr. 6, 2003) (quoting *Rutgerswerke AG & Frendo*

contends that there is no conflict because both jurisdictions recognize "the concept" of joint enterprise liability.[61] Defendants argue that there is a conflict because "there is no concept of joint enterprise . . . liability under Egyptian law."[62]

Abdelhamid argues that Egyptian law "recognizes the concept of joint enterprise liability and [that] its elements are the same as New York's law of joint enterprise."[63] While he concedes "'that the Egyptian Civil Code does not have a provision that explicitly replicates the American legal terminology as to joint enterprises,'"[64] Abdelhamid argues that the "'legal commentary and cumulative judicial precedents on sections 169 and 174 [of the Egyptian Civil Code] clearly engender the same legal concepts and standards [as those] relating to joint

---

*S.P.A. v. Abex Corp.*, No. 93 Civ. 2914, 2002 WL 1203836, at \*16 (S.D.N.Y. June 4, 2002)).

[61]   *See* Plaintiff's Supplemental Brief in [*sic*] Applicability of Egyptian Law ("Pl. Egypt Law Mem.") at 3.

[62]   Altria Group, Inc.'s and Phillip Morris International, Inc.'s Memorandum on the Applicability of Egyptian Law ("Def. Egypt Law Mem.") at 5.

[63]   Pl. Egypt Law Mem. at 4.

[64]   *Id.* (quoting 6/4/07 Affidavit of Khaled Abou El Fadl, plaintiff's expert in Egyptian law ("El Fadl Aff."), Ex. A to Pl. Egypt Law Mem., ¶ 18).

16

enterprises in American jurisprudence."[65]  Section 169,[66] in Abdelhamid's view,

means that when "defendants are acting as an 'effective partnership' or 'as a single

unit' . . . either by contract or by law, [the] defendants are jointly and severally

liable for any tort committed by a member of such enterprise.'[67]  Section 174,[68] he

further argues, has been relied on by Egyptian courts to impute the negligence of

one company "'to other companies functioning within a common enterprise'"[69]

---

[65]     *Id.*

[66]     Section 169 states:  "When several persons are responsible for a
harmful act, they are jointly and severally responsible to make reparation for the
harm. The liability will be shared equally between them, unless the judge fixes
their individual share in the damage due." El Fadl Aff. ¶ 15.

[67]     Pl. Egypt Law Mem. at 3 (quoting El Fadl Aff. ¶ 16).

[68]     Section 174 states:  "A principal is liable for the damage caused by an
unlawful act of his subordinate, when the act was performed by the subordinate in
the course, or as a result, of his employment. The subordination relationship
between the principal and subordinate exists even when the principal has not been
free to choose his subordinate, provided he has actual powers of supervision and
control over his subordinate."  6/11/07 Supplemental Declaration in Support [of
Altria Group, Inc.'s and Philip Morris International, Inc.'s Reply in Further
Support of [the Application of  Egyptian Law] by Dr. Tarek Fouad A. Riad ("Riad
Decl."), at 6.  "Principal," "subordinate" and "subordination relationship" have
also been translated as "master," "servant" and "relatiohship between master and
servant," respectively.  *See* Egypt Civil Code art. 174, *available at*
http://www.tashreaat.com/view_studies2.asp?id=488&std_id=82.

[69]     Pl. Egypt Law Mem. at 4 (quoting El Fadl Aff. ¶ 17).

"'as long as a certain hierarchical structure existed among investors'"[70] and "'the principal company is in a position to [exercise its supervisory prerogative] either by law or contract.'"[71]

Defendants argue that there is no concept of joint enterprise liability in Egyptian law. In defendants' view, Section 169 of the Egyptian Civil Code requires that each actor or member of the partnership must act wrongfully — "commit a fault" — to be liable.[72] Section 174 is limited to "the employment context" — "it applies only 'where the employee in the course or as a result of the performance of the tasks entrusted to him by the employer commits a fault.'"[73]

I conclude that Egyptian law does not recognize joint enterprise liability. The plain text of the Egyptian Civil Code, section 169 — "when several persons are responsible for a harmful act" — suggests that a party must act and cause injury in order to be liable, and cannot be vicariously liable for the acts or omissions of another. Likewise, the plain text of section 174 — which uses the

---

[70]    *Id.* at 3 (quoting El Fadl Aff. ¶ 17).

[71]    *Id.* (quoting El Fadl Aff. ¶ 17).

[72]    *See* Altria Group, Inc.'s and Phillip Morris International, Inc.'s Reply in Further Support of the Application of Egyptian Law ("Def. Egypt Law Reply") at 3.

[73]    *Id.* at 3 (quoting Riad Decl. at 1-2).

18

words "principal," "subordinate," and "employment" — applies to the employer-employee relationship rather than to a joint enterprise where the parties have an equal right of control.[74]

Adbelhamid's argument that Egyptian court precedent supports his expansive reading of these two sections is faulty. Egypt is a civil law jurisdiction so, as defendants point out, "an Egyptian court has no power to exceed the scope of rules enacted by the legislature."[75] Even if this Court turned to Egyptian court rulings for guidance on the scope of the Code's provisions, however, Abdelhamid does not cite a single Egyptian case in support of his argument.[76]

### B.    Conflict of Laws Analysis

There is a conflict between New York law and Egyptian law on the issue of joint enterprise liability because New York law recognizes this doctrine

---

[74]    Although Abdelhamid's expert on Egyptian law stated that scholarly authorities on Egyptian law support his interpretation of the two sections, the defendants' expert stated that he "totally disagrees" with Abdelhamid's reading of the same authorities. Riad Decl. at 7. *See also* Pl. Egypt Law Mem. at 3-4. This dispute among experts is irrelevant, however, because the plain language of the two sections reveals that neither section permits joint enterprise liability.

[75]    Riad Decl. at 8.

[76]    *Cf. Guidi*, 2003 WL 1907901, at *2 (holding that defendant's view of law was correct where the defendant's experts engaged in point by point survey of relevant Egyptian precedents).

19

and Egyptian law does not. Therefore, under New York's choice of law rules,

Egyptian law presumptively applies unless it can be shown that New York's

connection with the case justifies displacing Egyptian law.

New York's connection is tenuous at best. The State's only relevant

connection is that Altria was domiciled in New York when Ms. Abdelhamid was

electrocuted in Egypt. New York has little or no interest in ensuring that its

domiciliary corporations are held vicariously liable for injuries to non-

domiciliaries in foreign jurisdictions.[77]

By contrast, Egypt has multiple connections to the case: Ms.

Adbelhamid was electrocuted in Egypt; the advertising booth was constructed in

Egypt; and Mansour — the company responsible for marketing and promoting

Marlboro cigarettes in Egypt — was incorporated and is domiciled in Egypt.

Egypt also has a strong interest in determining the potential tort liability of foreign

business entities that do business with domestic corporations. Accordingly,

Egyptian law governs on the issue of joint enterprise liability.

## C.    Direct Liability

---

[77]    Ms. Abdelhamid resided in Michigan and had no contacts with New
York. *See* Amend. Comp. ¶ 1.

20

Abdelhamid alleges that "Altria, [PMI], PMP, and/or Mansour" are directly liable for his wife's death because they owed duties to the individuals who attended the August 12th concert "to . . . provide an advertising booth . . . that was relatively safe" and that "Altria, [PMI], PMP and/or Mansour breached [this] duty."[78] He alleges that "in advance of the party and concert Altria, [PMI], PMP and/or Mansour were responsible for hiring and/or employing . . . experienced and safe electricians."[79] He further alleges that the Marlboro employee at the concert who did nothing to remedy the electrical defect was "Altria's, [PMI]'s, PMP's and/or Mansour's agent."[80]

Abdelhamid's allegations of direct liability are simply not plausible. His allegations that Altria and PMI acted negligently in building and operating the booth, or in hiring the contractor fail to adequately state a claim. There are no facts alleged in the Amended Complaint from which a court could reasonably infer that these American companies were responsible for hiring local electricians in Cairo, Egypt to set up a booth at a concert or that the employee manning the booth

---

[78]   Amend. Comp. ¶¶ 24-25.

[79]   *Id.* ¶ 16.

[80]   *Id.* ¶ 17.

21

was an agent of Altria or PMI.[81]  Both Altria and PMI are American businesses

that manage numerous products and brands around the world.  They both rely on

subsidiaries and contractors to market and distribute their products and promote

their brands in foreign countries.  It is also implausible — even drawing

reasonable inferences in Abdelhamid's favor — that either company had any

direct involvement in the wiring of an advertising booth at a beach concert in

Egypt, particularly given that PMP contracted Mansour to market and promote

Marlboro cigarettes in Egypt.  The construction and wiring of a booth to promote

Marlboro cigarettes are precisely the kinds of tasks that would be undertaken by

Mansour pursuant to this contract.  The Amended Complaint's legal conclusions

as to agency law and negligence need not be credited and indeed are not supported

by any factual allegations in the Amended Complaint.  Accordingly, the Amended

Complaint fails to state a claim based on defendants' direct liability to

Abdelhamid.

---

[81]     *See Bell Atlantic*, 127 S. Ct. at 1965 ("factual allegations must be
enough to raise a right to relief above a speculative level").

## D.    Vicarious Liability

In the alternative, Adbelhamid claims that Altria and PMI should be held vicariously liable for Ms. Abdelhamid's death. He pleads respondeat superior, but also argues in his brief a theory of joint enterprise. Both theories fail.

With respect to joint enterprise, as discussed above, Egyptian law applies here and does not recognize joint enterprise liability.[82] Accordingly, these defendants cannot be held liable as part of a joint enterprise.

In addition, the defendants cannot be held liable under the doctrine of respondeat superior. Both New York law and Egyptian law recognize this doctrine. The key element of respondeat superior, however, is an employment relationship between the alleged tortfeasor and the party that the defendant is seeking to hold vicariously liable. The alleged tortfeasor here is the builder and operator of the booth. As already discussed, the Amended Complaint fails to

---

[82]    In his response to the defendants' motion to dismiss, the plaintiff stated that: "to the extent that the Court deems it necessary, plaintiff should be allowed to amend his pleadings under Fed. R. Civ. P. 15[(a)] to include the words 'joint enterprise liability.'" Plaintiff's Response to Defendants Altria Group, Inc. and Philip Morris International's Motion to Dismiss Plaintiff's First Amended Complaint ("Pl. Mem.") at 7. Because the Court has determined that the doctrine of joint enterprise liability is inapplicable here as a matter of law, amending the Amended Complaint would be futile. Thus, plaintiff's request for leave to amend is denied.

23

allege that either Altria or PMI directly "employed" the contractors who built the

booth or controlled the persons who operated it.  Accordingly, Abdelhamid has

likewise failed to allege the prerequisite for liability under New York's doctrine of

respondeat superior.  "Because [Abdelhamid] [has] not nudged [his] claims across

the line from conceivable to plausible, [his] [amended] complaint must be

dismissed."[83]

### E.    Defendants' Motion for Sanctions

The defendants have also moved for sanctions against Abdelhamid's

counsel pursuant to Rule 11.  They charge that not only was there no evidentiary

support for many of the allegations in the Amended Complaint, but that

Abdelhamid's counsel was aware of evidence that directly contradicted many of

the allegations.[84]  They also charge that existing law did not support a claim of

vicarious liability based on respondeat superior as alleged in the Amended

Complaint.[85]  The defendants, who notified Abdelhamid's counsel of these alleged

deficiencies after the Amended Complaint was filed on January 31 but before they

---

[83]      *Bell Atlantic*, 127 S. Ct. at 1974.

[84]      *See* Memorandum of Law in Support of Defendants Altria Group,
Inc's and Philip Morris International, Inc.'s Motion for Sanctions Pursuant to Fed.
R. Civ. P. 11 ("Def. R. 11 Mem.") at 8-12.

[85]      *See id.* at 12.

moved for sanctions on April 4,[86] have requested that the Court sanction

Abdelhamid's counsel in the amount of $60,607 — the attorneys' fees that the

defendants have incurred in prosecuting their motion to dismiss the Amended

Complaint.[87]

    In the Amended Complaint, Abdelhamid asserted new factual

allegations about Altria and PMI's corporate activities. These allegations,

however, were directly contradicted by the deposition testimony of Altria and PMI

corporate officers and appear to be without any grounding in fact. *First*, the

Amended Complaint alleged that PMI did business all over the world, including in

Egypt.[88] On December 5, 2006, however, Ann Marie Kaczorowski, PMI's

Corporate Secretary, testified at a desposition that PMI was a holding company

whose sole purpose was to receive dividends from affiliates and deliver those

---

[86] *See* 2/23/07 Letter from Brian Otero, Counsel for Altria, to Vernon Johnson, Counsel for Abdelhamid, Ex. E to 4/7/07 First Declaration of Brian V. Otero, Esq. in Support of Defendants Altria Group, Inc.'s and Philip Morris International, Inc's Motion for Sanctions Pursuant to Fed. R. Civ. P. 11 ("First Otero Decl.").

[87] *See* Def. R. 11 Mem. at 14; Second Declaration of Brian Otero in Support of Defendants Altria Group, Inc.'s and Philip Morris International, Inc.'s Motion for Sanctions Pursuant to Fed. R. Civ. P. 11 ¶ 4; Declaration of Lonnie D. Nunley, III in Support of Defendants Altria Group, Inc.'s and Philip Morris International, Inc.'s Motion for Sanctions Pursuant to Fed. R. Civ. P. 11 ¶ 4.

[88] *See* Amend. Comp. ¶ 3.

25

dividends to Altria.[89] *Second*, the Amended Complaint alleged that PMI entered

into licensing and manufacturing agreements with Mansour through PMP.[90] Yet

Kaczorowski testified that PMI did not engage in advertising, marketing or

licensing and exercised no direction, supervision or control over PMP's business.[91]

Counsel for PMI also emailed a copy of the licensing agreement — an agreement

between Mansour, PMP and Eastern Company S.A.E. — to Abdelhamid's counsel

in November of 2006, which also supported PMI's lack of involvment.[92] *Third*,

the Amended Complaint alleged that "Altria, [PMI], PMP and/or Mansour were

responsible for hiring and/or employing reasonably experienced and safe

electricians" to inspect the booth that advertised Marlboro cigarettes.[93] On

December 5, 2006, however, G. Penn Holsenbeck, the Vice President of Altria,

testified at a deposition that Altria never manufactured, advertised or distributed

---

[89]    *See* Deposition of Ann Marie Kaczorowski ("Kaczorowski Dep."), Ex. C to First Otero Decl., at 11, 17, 31-32.

[90]    Amend. Comp. ¶¶ 7-8.

[91]    *See* Kaczorowski Dep. at 23, 34.

[92]    *See* 11/22/06 Email from Nunley to Johnson, Ex. D to First Otero Decl.

[93]    Amend. Comp. ¶ 16.

cigarettes in Egypt.[94]  Moreover, it was factually impossible for PMI to have been responsible for hiring or employing electricians because PMI had no employees.[95] *Finally*, the Amended Complaint alleged that the employee at the booth was "Altria's, [PMI]'s, PMP's and/or Mansour agent."[96]  Because PMI had *no* employees, however, the allegation that the employee at the booth *could* have been PMI's agent is baseless.[97]

Abdelhamid's counsel did not provide the Court with any evidence of the factual bases for his allegations in his response to the defendants' motion, nor did he even contend that "there is (or likely will be) 'evidentiary support' for the allegation[s]."[98]  He also did not seek to amend his pleading to retract these allegations within the twenty-one day "safe harbor" period.  Accordingly, the Court finds that Abdelhamid's counsel violated Rule 11(b)(3) because "a

---

[94]    *See* 12/5/06 Deposition of G. Penn Holsenbeck ("Holsenbeck Dep."), Ex. B to First Otero Decl., at 8-9.

[95]    *See* Kaczorowski Dep. at 21.

[96]    Amend. Comp. ¶ 17.

[97]    *See* Kaczorowski Dep. at 21.

[98]    Rule 11 Advisory Committee Note.

27

competent attorney could not form a reasonable belief that [the allegations in the Amended Complaint] were well grounded in fact."[99]

In addition, the Amended Complaint asserted that Altria and PMI were vicariously liable under the doctrine of respondeat superior.[100] As discussed above in the motion to dismiss discussion, this contention is not supported by existing law. In his brief in oposition to the motion to dismiss, Abdelhamid abandoned his respondeat superior theory and advanced a new theory of vicarious liability under the doctrine of joint enterprise.[101] He argued that a defendant corporation could be liable for the tortious actions of a partner in the course of a plan to market a product. Although the Court did not reach the issue of whether this theory has any merit because Egyptian law applies and does not recognize joint enterprise liability, it was reasonable for his counsel to believe that this was a non-frivolous argument for the extension of existing law. Therefore, the argument does not violate Rule 11(b)(2).

---

99 Fed. R. Civ. P. 11(b).

100 *See* Amend. Comp. ¶¶ 21-22.

101 Abdelhamid offered to remove references to respondeat superior in a proposed Second Amended Complaint. *See* Plaintiff's Response to Defendant's Motion for Sanctions ("Pl. R. 11 Mem.") at 2; 4/2/07 Letter from Vernon Johnson to Brian Otero, Ex. A to Pl. R. 11 Mem.; Plaintiff's [Proposed] Second Amended Complaint and Demand for a Jury Trial, Ex. B to Pl. R. 11 Mem., ¶¶ 21-22.

Defendants' requested sanction of an award of their legal fees is unduly harsh and is therefore denied. There is no evidence that Abdelhamid's counsel made his allegations in bad faith or with the intent to harass or injure. It is conceivable that his counsel felt that these allegations were accurate within the context of his theory of joint enterprise liability. It is also possible that his counsel believed that — given the vast and complex nature of Altria's corporate structure — further discovery would unearth evidence supporting his allegations against the defendants.[102]

A more appropriate sanction is the dismissal of Adbelhamid's Amended Complaint with respect to Altria and PMI. Although the Court has already decided to dismiss the Amended Complaint for failure to state a claim, this sanction under Rule 11 serves as an alternative ground for dismissal.

## VI. CONCLUSION

Given the lack of direct liability and the inapplicability of vicarious liability, Abdelhamid has failed to state a claim against Altria and PMI for Ms.

---

[102]    *See* Plaintiff's Response to Defendants Altria Group, Inc. and Phillip [*sic*] Morris International's Motion to Dismiss Plaintiff's First Amended Complaint, 7 ("[D]iscovery is essential for [Abdelhamid] to further demonstrate how defendants jointly license, market, promote, distribute, and sell Marlboro cigarettes. Discovery may reveal, *inter alia*, defendants' specifications and other requirements as to defendants' advertising practices including electrical requirements for lighted cigarette signs.").

Abdelhamid's death.  For these reasons, defendants' motion to dismiss the First

Amended Complaint is granted with respect to Altria and PMI.  For the reasons

discussed above, defendants' Rule 11 motion is granted to the extent that the

pleading violations provide an alternative ground on which to dismiss the

Amended Complaint as to these defendants.  However, the request for the recovery

of attorneys' fees is denied.  The Clerk of the Court is directed to close these

motions [Docket Nos. 24, 29].  A conference is scheduled for August 30, 2007, at

4:30 p.m., after Philip Morris Products S.A. serves a responsive pleading.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:       New York, New York
             July 27, 2007

30

- Appearances -

**For Plaintiff:**

Vernon R. Johnson, Esq.
Fieger, Fieger, Kenney & Johnson, P.C.
19390 West Ten Mile Road
Southfield, Michigan 48075
(248) 355-5555

**For Defendant Philip Morris International, Inc.:**

Lonnie D. Nunley III, Esq.
Hunton & Williams LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219
(804) 788-8200

**For Defendant Altria Group, Inc.:**

Brian V. Otero, Esq.
Hunton & Williams LLP
200 Park Avenue, 52nd Floor
New York, New York 10166
(212) 309-1000